600 S.E.2d 9 (2004)
In the Matter of A.P, S.P.
No. COA03-1516.
Court of Appeals of North Carolina.
August 17, 2004.
*10 Buncombe County Department of Social Services, by Renae S. Alt, Asheville, for petitioner-appellee.
Michael N. Tousey, Asheville, for Guardian ad Litem.
Mercedes O. Chut, Greensboro, for respondent-appellant.
McGEE, Judge.
Buncombe County Department of Social Services (DSS) filed a petition dated 7 August 2002 alleging that A.P. was a neglected juvenile. DSS filed a separate petition dated 15 August 2002 alleging that S.P. was a neglected juvenile. The petitions alleging neglect of A.P. and S.P. (collectively the children) listed the following persons as the children's parents, guardian, custodian, or caretaker: J.P. and J.P. (as mother and father, collectively parents), B.H. as paternal grandmother, and S.H. (respondent) as paternal step-grandfather. In an order entered 23 October 2002, the trial court adjudicated the children neglected, ordered that temporary custody of the children be granted to DSS with placement in the discretion of DSS, and ordered that visits between the children and their parents be suspended until further hearings. The trial court again ordered that custody of the children remain with DSS in an order entered 18 November 2002.
DSS filed a motion to cease visitation between the children and B.H. on 7 February 2003. In an order filed 10 March 2003, the trial court ordered that the children remain in the custody of DSS but further ordered reunification with the parents as the best plan for the children. In an order filed 9 April 2003, the trial court allowed DSS' motion to cease visitation and ordered that visitation between the children and B.H. cease. In an order filed 24 June 2003, the trial court ordered that the children remain in the custody of DSS, that the best plan for the children was adoption, and that all visits between the children and all family members be suspended. Respondent appeals. In a motion filed 11 December 2003, guardian ad litem of the children moved this Court to dismiss respondent's appeal.
*11 The issue before this Court is whether respondent, as paternal step-grandfather of the children, is an appropriate party to appeal the 24 June 2003 order.
N.C. Gen.Stat. §§ 7B-1001 and 7B-1002 (2003) designate when a right to appeal exists in a juvenile matter and which persons possess the right to appeal. N.C. Gen.Stat. § 7B-1001 provides that "[u]pon motion of a proper party as defined in G.S. 7B-1002, review of any final order of the court in a juvenile matter under this Article shall be before the Court of Appeals." The statute further provides that a "final order" includes "[a]ny order of disposition after an adjudication that a juvenile is abused, neglected, or dependent[.]" N.C. Gen.Stat. § 7B-1001(3) (2003). In this case, the order from which respondent appeals is an order of disposition after the children were adjudicated neglected. Accordingly, there is no dispute that the order is appealable.
Under N.C. Gen.Stat. § 7B-1002, "[a]n appeal may be taken by the guardian ad litem or juvenile, the juvenile's parent, guardian, or custodian, the State or county agency." In this case, respondent asserts that he is a proper party to appeal this order. Respondent argues that he "was the custodian of the [c]hildren prior to initiation of the juvenile petition[s] alleging neglect in Buncombe County." Accordingly, respondent asserts that "he clearly has a right to pursue the present appeal." However, DSS disputes respondent's assertion.
N.C. Gen.Stat. § 7B-101(8) (2003) defines a "[c]ustodian" as "[t]he person or agency that has been awarded legal custody of a juvenile by a court or a person, other than parents or legal guardian, who has assumed the status and obligation of a parent without being awarded the legal custody of a juvenile by a court." There is no question that respondent has not been awarded legal custody of the children. However, the analysis must focus on whether respondent qualifies as one "who has assumed the status and obligation of a parent without being awarded the legal custody" of the children.
In support of his contention that he was the "custodian" of the children prior to initiation of the petitions alleging neglect, respondent claims to have been "made a party to the juvenile court proceedings in Buncombe County[.]" Respondent's claim to being a party hinges on the following: (1) that he and his wife were listed on the petitions as "parents, guardian, custodian, or caretaker" and (2) that he was served with a petition and summons regarding the alleged neglect of each child.
Despite respondent's argument, we do not find that he was the custodian of the children simply because he and his wife were listed on the petitions. Rather, a juvenile petition sets forth the names of persons who fit within any one of four categories, including parent, guardian, custodian, and caretaker. A petition also designates the relationship or title each listed person has with respect to the child or children involved. In the petitions at issue, J.P. and J.P. were named as mother and father. B.H. and respondent were also named in the petitions. However, they were designated simply as paternal grandmother and paternal step-grandfather. The fact that respondent and his wife were not deemed "custodians" in the petitions is evidence indicating they were listed simply because they fulfilled the role of caretakers. Further evidence that respondent was merely a caretaker is the fact that respondent's attorney submitted a report to the trial court on 22 January 2003 on behalf of respondent titled "Report to the Court on behalf of Caretaker [Respondent]." (emphasis added). This report stated that "[Respondent] and his wife [] have had [A.P.] in their home often throughout her life and have an established relationship with [A.P.] as primary caretakers." (emphasis added). If, in fact, respondent qualified only as a caretaker, N.C. Gen. Stat. § 7B-1002 does not grant him a right to appeal.
In further support of respondent's claim to being custodian of the children, he stressed the 12 September 2002 report of the guardian ad litem which stated that the children "are in custody of their paternal Grandmother and paternal Grand Step-father[.]" Again, we do not find this argument persuasive. This report referred to the children being in the "custody" of their grandparents and was simply the guardian ad litem's way *12 of specifying where the children were physically located. The use of the term "custody" in the guardian ad litem's report does not establish respondent's legal status with respect to the children. We note that over time the definition of custodian has undergone changes. Under N.C. Gen.Stat. § 7A-278(7) (1969), custodian was defined as "a person or agency that has been awarded legal custody of a child by a court, or a person other than parents or legal guardian who stands in loco parentis to a child." Subsequently, the General Assembly narrowed the definition and limited custodian to only "[t]he person or agency that has been awarded legal custody of a juvenile by a court." N.C. Gen.Stat. § 7A-517(11) (1995). However, the definition was again changed, effective 27 October 1998, and broadened to include, in addition to one who had been awarded legal custody, "a person, other than parents or legal guardian, who has assumed the status and obligation of a parent without being awarded the legal custody of a juvenile by a court." It is this version of the definition that is presently in effect. See N.C. Gen. Stat. § 7B-101(8).
Cases interpreting N.C. Gen.Stat. § 7A-278(7) have stated that "`[t]he term "in loco parentis" means in the place of a parent, and a "person in loco parentis" may be defined as one who has assumed the status and obligations of a parent without a formal adoption.'" Shook v. Peavy, 23 N.C.App. 230, 232, 208 S.E.2d 433, 435 (1974) (quoting 67 C.J.S., "Parent and Child," § 71, p. 803). See also Morgan v. Johnson, 24 N.C.App. 307, 308, 210 S.E.2d 503, 504 (1974). Thus, the current definition of custodian and the 1969 version essentially have the same meaning.
The concept of in loco parentis has been addressed in the context of whether parental immunity exists in tort actions. For example, Liner v. Brown, 117 N.C.App. 44, 449 S.E.2d 905 (1994), disc. review denied and cert. denied, 340 N.C. 113, 456 S.E.2d 315 (1995) involved the issue of whether the defendants stood in loco parentis to a child who drowned in their swimming pool. In that case, our Court analyzed the meaning of in loco parentis and stated that "[a] person does not stand in loco parentis `from the mere placing of a child in the temporary care of other persons by a parent or guardian of such child.'" Liner, 117 N.C.App. at 49, 449 S.E.2d at 907 (quoting State v. Pittard, 45 N.C.App. 701, 703, 263 S.E.2d 809, 811, disc. review denied, 300 N.C. 378, 267 S.E.2d 682 (1980)). Rather, "`[t]his relationship is established only when the person with whom the child is placed intends to assume the status of a parent  by taking on the obligations incidental to the parental relationship, particularly that of support and maintenance.'" Id.
In the case before us, A.P. was initially placed with respondent and B.H. around 11 March 2002 after A.P.'s mother reported that she had been forced out of the home by A.P.'s father. About a month later, both parents signed case plans agreeing to participate in parenting classes. A.P.'s father also agreed to participate in substance abuse classes and to maintain stable housing and employment. In addition, A.P.'s mother agreed to follow up with therapy and maintain stable housing and employment. The fact that both parents signed a case plan and made commitments to participate in programs is evidence that they did not intend for A.P. to remain with respondent and B.H. indefinitely. Rather, A.P.'s placement was viewed as more of a temporary arrangement.
When S.P. was born in May 2002, she remained with her parents because DSS thought the parents had made progress. However, the parents began having problems, and on 13 August 2002, respondent and B.H. signed a kinship agreement in which they agreed to provide placement for S.P. In orders entered 23 October 2002 and 18 November 2002, the trial court ordered that temporary custody of the children remain with DSS. In addition, DSS was given discretion for placement of the children, including, but not limited to the home of respondent and B.H. After allegations of sexual abuse, the children were moved from respondent's home to foster care on 12 November 2002.
The evidence does not indicate that respondent and B.H. assumed the role and status of parents to the children. First, the *13 children spent only a relatively short amount of time with respondent and B.H. before they were moved to foster care. The evidence shows that A.P. lived with respondent and B.H. for approximately eight months while S.P. lived with them for only about three months. Second, the children were not simply abandoned by their parents. Rather, when A.P. was first placed with respondent and B.H., her parents made efforts to improve parenting skills, to maintain a suitable environment for her, and to restore the parent-child relationship. Similarly, the parents made efforts regarding S.P. until the kinship agreement was signed. Thus, we conclude that the children were merely placed in the temporary care of respondent and B.H. Under Liner, such placement does not warrant the conclusion that respondent was standing in loco parentis to the children.
In contrast to the case before us, In re Kowalzek, 32 N.C.App. 718, 233 S.E.2d 655 (1977) provides an example of when individuals do qualify as custodians with standing to challenge a custody order. Kowalzek involved a child whose mother left him with his father when the child was about one year old. Kowalzek, 32 N.C.App. at 719, 233 S.E.2d at 656. About three months after his mother left, the child's father was killed in an accident. Id. By emergency order, the child was placed in the physical custody of a woman who had begun to care for the child when the child's mother left. Id. Subsequently, an order was entered placing the child with the woman who had cared for him and that woman's sister (the respondent). Id. After a full hearing, the child was placed with the respondent and her husband (collectively the respondents). Id. at 719-20, 233 S.E.2d at 656. Subsequently, custody was modified and the child was placed with his mother. Id. at 720, 233 S.E.2d at 656-57.
This Court held that the respondents qualified as custodians under N.C. Gen.Stat. § 7A-278(7) and thus had standing to appeal. Kowalzek, 32 N.C.App. at 721-22, 233 S.E.2d at 657. This conclusion was based on the fact that the child had been in the physical custody of the respondents; the respondents had supported the child for several months; and the respondents had expressed a desire to keep the child permanently. Id. at 721, 233 S.E.2d at 657. Furthermore, it is noteworthy that the child's mother had failed to acknowledge the child when she applied for public assistance after leaving her husband and the child. Id. at 719, 233 S.E.2d at 656. In addition, she had failed to seek any information about the child after her husband was killed. Id. Also, the respondents had been "explicitly referred to as parties" in the proceedings. In light of these facts, this Court concluded that the respondents had undertaken "the obligations of parents" and stood in loco parentis to the child. Id. at 721, 233 S.E.2d at 657.
The case before us differs from Kowalzek in several significant ways. First, the child in Kowalzek was essentially without a natural parent because he had been abandoned by his mother and his father had been killed. Second, the respondents in Kowalzek were explicitly considered parties in the custody proceedings. In contrast, in our case, both parents made efforts to maintain a parent-child relationship with A.P. and S.P. Furthermore, respondent and B.H. were not made parties to the actions. Rather, they were merely listed on the petitions. Accordingly, respondent lacks standing to appeal under N.C. Gen.Stat. § 7B-1002.
Appeal dismissed.
Judges McCULLOUGH and ELMORE concur.