IN THE MATTER OF: T.B.

No. COA09-575

(Filed 3 November 2009)

**Child Support, Custody, and Visitation— grandparents— standing**

Respondent maternal grandmother's appeal from the trial court's adjudication and disposition orders awarding physical and legal custody of a minor child to his paternal grandparents was dismissed for lack of standing because: (1) respondent is neither a parent nor an appointed guardian of the child under N.C.G.S. § 7B-1002(4); and (2) respondent failed to demonstrate that she was the non-prevailing party since the trial court granted her requests to not award permanent custody to the paternal grandparents and grant visitation privileges to respondent.

Appeal by Respondent from orders entered 26 March 2009 by Judge Regina M. Joe in Scotland County District Court. Heard in the Court of Appeals 7 September 2009.

IN RE T.B.

[200 N.C. App. 739 (2009)]

*Scotland County Department of Social Services, by Lisa D. Blalock, for Petitioner-Appellee.*

*Sofie W. Hosford, for Respondent-Appellant.*

*Pamela Newell Williams, for Guardian ad Litem.*

BEASLEY, Judge.

Respondent is the minor child's maternal grandmother. She appeals from the trial court's adjudication and disposition orders awarding physical and legal custody of T.B[1]. to his paternal grandparents. Due to insufficient information in the record to determine whether Respondent has standing to pursue this appeal, we dismiss the appeal.

T.B. was born in 2003. He lived with his mother until November 2005. There are references made to a civil court proceeding where Respondent was awarded temporary custody due to T.B.'s mother's substance abuse problems, lack of stable housing, and lack of employment. No such order is provided in the record before this Court. T.B.'s father Mitchell B. has a history of substance abuse and criminal activity. During the time that T.B. lived with Respondent, T.B. regularly visited with his paternal grandmother, J. Ford, and her husband, T. Ford. Further references are made in the record that in 2007 the Fords filed a motion to intervene in the civil custody case seeking custody of T.B. Again, the record before this Court contains no such order. At some point allegations were made by Respondent that T.B. had been sexually abused by Mr. Ford, and these allegations were made known to Scotland County Department of Social Services (DSS), but the record does not reveal whether DSS or law enforcement investigated the allegations or the outcome of such investigation.

On 26 June 2008, Respondent contacted the child's guardian *ad litem* (GAL) with concerns that T.B. had regressed and was urinating on himself. Although Respondent informed the GAL that the behavior occurred after T.B. visited with the Fords, DSS investigated and found that the incidents only occurred at daycare after T.B. had been moved to a different classroom. When T.B. returned to his original classroom, the behaviors ceased. On 30 June 2008, Respondent reported that T.B. told her that Mr. Ford had put his "pee pee in [T.B.]'s mouth." DSS contacted law enforcement and conducted an

---

1. To protect the privacy of the minor, we refer to him in this opinion by his initials T.B.

**IN RE T.B.**

[200 N.C. App. 739 (2009)]

investigation. T.B. did not reveal any specific information about the time period or location of the alleged abuse, and in fact informed the social worker that Respondent told him to report sexual abuse by Mr. Ford. Based on its investigation, DSS was unable to determine whether Mr. Ford sexually abused T.B., and therefore could not substantiate the allegation. Similarly, law enforcement did not gather enough information for a formal charge. In a telephone call on 14 July 2008, Respondent told the social worker that she allowed T.B. to live with his mother.

On 15 July 2008, DSS filed a juvenile petition alleging neglect, stating that the child "does not receive proper care supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker," and that the child "lives in an environment injurious to the juvenile's welfare." DSS was granted non-secure custody the same day, and T.B. was placed in foster care.

T.B. was placed with the Fords on 4 August 2008. On 22 August 2008, T.B.'s mother signed an Out of Home Family Services Agreement in which she agreed to: (1) submit to a psychological evaluation and follow all recommendations; (2) complete a drug assessment and submit to random drug screens; and (3) obtain suitable housing. The permanency plan at that time was reunification.

At the adjudication hearing held on 25 September 2008, all parties stipulated to neglect in that Respondent returned T.B. to his mother without notifying or consulting DSS. The trial court adjudicated T.B. as neglected and continued the matter for disposition.

At the 29 January 2009 disposition hearing the trial court ordered T.B. to be placed with the Fords. The trial court concluded that the placement was in the best interest of the child. Additionally, the court relieved DSS of its responsibility to continue reunification efforts regarding the parents and Respondent. It appears from the record that the adjudication order was initially entered on 24 October 2008, but was signed by a judge who had not presided over the matter. The trial judge who did preside over the adjudication hearing, entered an amended adjudication order on 26 March 2009. The disposition order was initially signed and filed on 19 February 2009, but the order was amended and filed on 26 March 2009 by the trial court to correct "material errors and omissions." From the amended orders, Respondent appeals.

We first address the issue of whether Respondent has standing to bring this appeal. Both Petitioner and the GAL argue that Respondent

**IN RE T.B.**

[200 N.C. App. 739 (2009)]

has no standing to pursue an appeal of the court's orders because she is neither a parent, a guardian, or a custodian pursuant to N.C. Gen. Stat. § 7B-1002(4) (2007). Although Respondent's brief does not address the issue of standing, we are compelled to address this issue. " 'Standing is jurisdictional in nature and "[c]onsequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved." ' " *In re T.M.*, 182 N.C. App. 566, 570, 643 S.E.2d 471, 474 (quoting *In re Miller*, 162 N.C. App. 355, 357, 590 S.E.2d 864, 865 (2004)), *aff'd*, 361 N.C. 683, 651 S.E.2d· 884 (2007). "As the party invoking jurisdiction, plaintiff [] ha[s] the burden of proving the elements of standing." *Neuse River Found. v. Smithfield Foods*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 364 (1992)).

An appeal may be taken from an order of disposition following an adjudication of neglect, abuse, or dependency. N.C. Gen. Stat. § 7B-1001(3) (2007). Only certain parties may pursue such an appeal. Under N.C. Gen. Stat. § 7B-1002 (4), a parent, appointed guardian, or custodian who is a non-prevailing party may bring an appeal. Generally, the party invoking jurisdiction has the burden of proving she has standing to pursue their claims. *See Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51 (citation omitted). In the case *sub judice*, Respondent, T.B's maternal grandmother, is neither a parent nor an appointed guardian for purposes of this statute.

N.C. Gen. Stat. § 7B-101(8) (2007) defines "custodian" as "[t]he person or agency that has been awarded legal custody of a juvenile by a court or a person, other than parents or legal guardian, who has assumed the status and obligation of a parent without being awarded the legal custody of a juvenile by a court." There are places in the record where references are made of a prior civil court proceeding where Respondent was awarded temporary custody of T.B. in 2005. In the "Amended Order on Adjudication", finding of fact number 6 states, in part that:

> [p]ursuant to G.S. § 7B-902. The parties have agreed to enter into a consent judgment. With respect to the Respondent father, the Court received the testimony of Wendy Stanton. The parties have agreed and the Court finds that the juvenile is a neglected juvenile in that the juvenile does not receive proper care or supervision from [him] parent or custodian, and lives in an environment injurious to the juvenile's welfare, to wit:

**IN RE T.B.**

[200 N.C. App. 739 (2009)]

Scotland County Department of Social Services received a report on June 23, 2008, that the juvenile had regressed and was using the bathroom on himself (urinating and defecating) while at daycare. *The maternal grandmother has temporary custody of the juvenile due to an extensive history of the respondent mother's substance abuse and drug history, lack of stable housing, and lack of employment.* The respondent father has [sic] history of substance abuse, a lengthy criminal record, and a strained relationship with the juvenile at this time. Upon investigation, the social worker found that the regression of the bathroom behavior was only at daycare. The daycare provider moved the juvenile back into his old classroom with which he was familiar and his regressions ceased. (emphasis added).

A North Carolina Guardian Ad Litem Court Report dated 29 January 2009 states:

This GAL has been involved with T.[B.] since May of this year, when she was appointed as Guardian ad Litem in a Civil [sic] custody case involving [G.] Faulk (maternal grandmother) [sic] and [J.] and [T.] Ford (paternal grandmother and step-grandfather). *Maternal Grandmother, [G. Faulk], has had temporary custody of T.[B.] since 12/12/05 due to an extensive history of unstable housing and substance abuse on the part of T.[B.'s] mother, . . . (Ms. Faulk's daughter).* . . . Mr. and Mrs. Ford filed a Motion to Intervene in the custody action regarding T.[B.] on 8/20/07 and an order was entered on 9/10/07 allowing them to do so. A Motion in the Cause was filed on 9/13/07 by the Ford's requesting custody of T.B. be placed with them. Since that time, the grandparents have been in a custody battle in Civil Court. . . ." (emphasis added).

There are several other references to a custody action commenced by Respondent in civil court, all of which are made either by testimony of a GAL volunteer, argument by the attorney for paternal grandmother, J. Ford, or argument by Petitioner. Respondent however has not provided a copy of an order awarding custody, either legal or physical, of T.B. to her. Our Court is not able to establish whether custody of T.B. was awarded to Respondent, the means and circumstances by which custody might have been awarded to Respondent, nor the time period and the duration of any custody order. Further, there is no order nor any inferences that any award of custody of T.B. to Respondent which might have been entered in 2005 or remained in effect in 2008.

IN RE T.B.

[200 N.C. App. 739 (2009)]

Because there is no evidence that Respondent was awarded legal custody, we must determine whether Respondent acted as custodian by "assum[ing] the status and obligation of a parent without being awarded the legal custody of a juvenile by a court." N.C. Gen. Stat. § 7B-101(8).

Such a determination involves deciding whether a person has acted *in loco parentis* to the child in question. *See In re A.P.*, 165 N.C. App. 841, 843, 600 S.E.2d 9, 11 (2004). As this Court has stated:

> A person does not stand *in loco parentis* "from the mere placing of a child in the temporary care of other persons by a parent or guardian of such child. This relationship is established only when the person with whom the child is placed intends to assume the status of a parent—by taking on the obligations incidental to the parental relationship, particularly that of support and maintenance."

*Liner v. Brown*, 117 N.C. App. 44, 49, 449 S.E.2d 905, 907 (1994) (quoting *State v. Pittard*, 45 N.C. App. 701, 703, 263 S.E.2d 809, 811 (1980)).

In *In re A.P.*, this Court held that the Respondent paternal step-grandfather was not an appropriate party to appeal from a permanency planning order. Several factors were noted: (1) the fact that the step-grandfather's name was listed on the juvenile petition as a parent, guardian, custodian, or caretaker was not dispositive; (2) the child's parents remained involved or were attempting to remain involved in the child's life, meaning that the placement with the step-grandfather was considered temporary; (3) the child was placed with the step-grandfather for only one month before the child's parents signed case plans with DSS, and the child only spent a total of eight months in the Respondent's care; (4) although the Respondent signed a kinship agreement several months after assuming care of the child, temporary custody remained with DSS; and (5) the step-grandfather was not explicitly made a party to any custody action beyond being listed on the juvenile petition. Despite the fact that this Court in *In re A.P.* acknowledged that the Respondent was a caretaker, and in fact the primary caretaker, of the child, this Court determined that the temporary nature of the care meant that the Respondent did not act *in loco parentis* to the child. The appeal was dismissed for lack of standing. *In re A.P.*, 165 N.C. App. at 843-47, 600 S.E.2d at 11-13.

In the instant case, DSS and the GAL argue that Respondent's unauthorized decision to return T.B. to his mother demonstrates her

lack of intent to assume the status and obligation of a parent. They further argue that T.B. was out of Respondent's care for at least six months while these proceedings advanced, and that Respondent failed to attend the disposition hearing. Petitioner contends these facts show that Respondent was merely a caretaker and not interested in assuming a parental role for T.B. After careful review, we conclude that the record is insufficient to establish whether Respondent was a custodian such that she has standing to pursue this appeal.

There is little information provided regarding the extent of and the periods that Respondent provided care for T.B. It appears that T.B. may have lived with Respondent from some time in 2005 for an unknown duration, and that Respondent had at least some responsibility for the child. T.B. also spent a great deal of time with his paternal grandparents, the Fords. The GAL report dated 29 January 2009 stated that the Fords "shared parenting responsibility" with Respondent. GAL Jean Barbour testified at the disposition hearing that T.B. "lived with [Respondent] and with the Fords," and that "[t]hey shared in the caretaking of him." When asked whether Respondent was T.B.'s primary caretaker and whether T.B. resided principally with Respondent, Barbour responded, "[w]ell, I don't know the answer to that. He resided with both of them. They shared caretaking responsibility of him." There is no evidence of Respondent's level of support and maintenance in caring for T.B., or whether it was Respondent or the Fords who took T.B. to medical appointments or provided for other needs, etc.

Unlike *In re A.B.*, there is no evidence about any involvement that either of T.B.'s parents might have had with T.B. during the period he lived with Respondent. T.B.'s mother did not sign a case plan until after T.B. was removed from Respondent's care in the autumn of 2008. It is also unclear the level of involvement by DSS during the time T.B. lived with Respondent and whether any steps were taken to attempt to reunify T.B. with either of his parents. We conclude that there is no evidence that would clarify whether T.B's living arrangement with Respondent was intended to be temporary or permanent or its duration.

In *In re A.P.*, this Court determined that the step-grandfather was merely a caretaker and not a custodian of the minor child. *Id.* at 846, 600 S.E.2d at 12. In the case *sub judice*, it appears that Respondent's care and supervision of T.B. was more involved than that of the Respondent in *In re A.P.* However, Respondent has failed to demon-

**IN RE T.B.**

[200 N.C. App. 739 (2009)]

strate to this Court that she had been awarded legal custody of T.B., that she was his custodian, and the duration of either status. Therefore, given the absence of court orders establishing Respondent's legal status with respect to T.B., and the lack of evidence presented as to Respondent's level of care and support of T.B. or of the participation of T.B.'s parents and DSS in T.B.'s life, and Respondent's return of T.B. to his mother, we are unable to conclude that Respondent's actions are consistent with one who assumes the status and obligation of a parent such that she was a "custodian" for purposes of N.C. Gen. Stat. § 7B-1002(4).

Respondent has also failed to demonstrate that she is the non-prevailing party. N.C. Gen. Stat. § 7B-1002(4) further states that to have standing, either a parent, guardian or custodian must be the "nonprevailing party." "A prevailing party is defined as one in whose favor the decision or verdict is rendered and judgment entered[.]" *House v. Hillhaven, Inc.*, 105 N.C. App. 191, 195, 412 S.E.2d 893, 896 (1992) (internal quotations omitted). Respondent stipulated to the trial court's finding of neglect. Respondent did not at the disposition hearings request that the trial court place custody of T.B. with her. In fact, Respondent did not appear at the disposition hearing. Respondent's counsel, in Respondent's absence, argued that T.B's paternal grandparents, the Fords, should not be awarded permanent custody and Respondent's counsel requested visitation on behalf of Respondent. Respondent's counsel argued:

> Your Honor, we ask' that you not award legal physical [sic] [custody] to the Fords on a permanent basis, that you keep this case open, and that [Respondent] be allowed to visit with her grandchild.

The trial court did not award permanent custody to the Ford's and the trial court granted visitation privileges to Respondent. Because the trial court granted the Respondent's requests, she has failed to articulate that she is a non-prevailing party.

We conclude that Respondent has failed to meet her burden demonstrating that she has standing to pursue this appeal as a custodian of the child and that she was the non-prevailing party. Accordingly, we dismiss the appeal.

Appeal dismissed.

Judges GEER and HUNTER, JR. concur.