IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-151

Filed: 6 October 2020

Chatham County, No. 19 CVD 523

JENNIFER GIBSON, Plaintiff,

v.

FRANCISCO C. LOPEZ, Defendant.

Appeal by Defendant from order entered 23 August 2019 by Judge James T. Bryan in Chatham County District Court. Heard in the Court of Appeals 11 August 2020.

> *Legal Aid of North Carolina, by Rachel Ann Gessouroun, Allison Young, Heather Seals Bankert, Larissa Mañón Mervin, Gina Reyman, TeAndra M. Miller, and Celia Pistolis, for Plaintiff.*
>
> *Edward Eldred for Defendant.*

BROOK, Judge.

Francisco C. Lopez ("Defendant") appeals from the entry of a domestic violence protective order ("DVPO") against him. On appeal, Defendant argues that the trial court erroneously concluded as a matter of law that Jennifer Gibson ("Plaintiff") had never acted in loco parentis to Defendant, her 14-year-old stepson, and therefore erred in issuing the DVPO. For the following reasons, we vacate the order of the trial court.

I. Factual and Procedural History

In early July of 2015, Plaintiff and Philippe Lopez ("Mr. Lopez") as well as Plaintiff's mother[1] and Mr. Lopez's two children from a prior relationship, Defendant and Nan,[2] began living together. Defendant and Nan were 10 and 12, respectively, at the time. Plaintiff testified that Mr. Lopez did not want her to work so she quit her job to "take care of the children[.]" The family moved from Kentucky to North Carolina shortly thereafter. Plaintiff and Mr. Lopez married on 9 February 2018.

Plaintiff and Mr. Lopez lived together from July 2015 until the filing of this action against Defendant on 18 July 2019. On one occasion in 2015, Plaintiff cared for Defendant alone for approximately a week while Mr. Lopez was away on work. Defendant resided in court-ordered treatment facilities from 2016 to 2018, but, otherwise, lived with Plaintiff and his father until Plaintiff filed for a DVPO.

Plaintiff testified that she had "[n]ever parented a teenager before . . . [she] got with [Mr. Lopez]." Plaintiff cared for Defendant and Nan by cooking, cleaning, taking them to appointments and school, and breaking up their fights; she also participated in therapy to help set boundaries for Defendant. According to Plaintiff, Defendant repeatedly told her that she was not his mother, and she responded, per Mr. Lopez's instruction, "No. I'm here."

---

[1] Plaintiff's mother passed away on 5 August 2015.

[2] We have used a pseudonym given that Nan was a minor when this case came on for hearing.

Plaintiff testified that she knew that Defendant suffered from mental health and anger issues, but she did not know their full extent until they moved to North Carolina. She testified that she witnessed an escalation in violence and anger from Defendant over the years, which included Defendant threatening to kill her dog in 2015 and breaking into her bedroom in 2016 and then looking for a knife in the kitchen, presumably to use against her, when she took away his iPod as punishment for getting in trouble at school. After this incident, Mr. Lopez installed a latch on their bedroom door. Defendant then spent two years in several court-ordered treatment facilities and returned home in 2018 in a "bad condition[,]" according to his father.

Defendant threatened to kill Plaintiff and made other threats in December 2018. Plaintiff responded by filing criminal charges against Defendant for communicating threats. The threats continued, however. For instance, on 11 July 2019, Defendant broke into Plaintiff's bedroom after she had locked herself in it, turned the power off to the room, and threatened her.

On 18 July 2019, Plaintiff filed for and received an ex parte DVPO against Defendant and Mr. Lopez. Plaintiff and Mr. Lopez separated on the same date. Plaintiff stayed in the home she had shared with Mr. Lopez and Defendant; they moved out.

The trial court conducted a hearing on the complaint on 7, 21, and 23 August 2019. At both the beginning of the hearing and the close of all evidence, Defendant argued that the trial court could not enter a permanent order against him because Plaintiff was acting in loco parentis to Defendant, and he was under 16 years old. The trial court disagreed and entered a DVPO against Defendant, finding, in part:

> 3. Due to the threatens [sic] and angry actions of the defendant toward the plaintiff, the defendant being out of the home for two years, and the defendant's anger toward the plaintiff worsening after his return, plaintiff was not ever able to act *in loco parentis* for the defendant.

Defendant timely noticed appeal.

## II. Analysis

On appeal, Defendant argues that the trial court could not issue a DVPO in favor of Plaintiff because she stood in loco parentis to Defendant, who was 14 years old at the time of the filing of the complaint and motion for a DVPO.[3]

---

[3] We first note that the DVPO entered on 23 August 2019 expired during the course of this appeal. DVPOs, however, can be extended for an additional year on two occasions. *See* N.C. Gen. Stat. § 50B-3(b) (2019). It is unclear from the record before us whether Plaintiff sought and received such an extension.

Regardless, Defendant's appeal is not moot. If the DVPO at issue has been extended, then Defendant remains subject to direct legal consequences flowing from the order, namely "restrictions on where [he] may or may not be located, or what personal property [he] may possess or use." *Mannise v. Harrell*, 249 N.C. App. 322, 332, 791 S.E.2d 653, 660 (2016). But, even if it has not been extended, Defendant is still subject to the "stigma that is likely to attach to a person judicially determined to have committed domestic abuse." *Smith v. Smith*, 145 N.C. App. 434, 437, 549 S.E.2d 912, 914 (2001) (internal marks and citation omitted). For example, "a person applying for a job, a professional license, a government position, admission to an academic institution, or the like, may be asked about whether he or she has been the subject of a domestic violence protective order." *Id.*

We further note that Defendant has now reached the age of 16, and N.C. Gen. Stat. § 50B-1(b)(3)'s age limitation only applies to minors "under the age of 16[.]" However, the fact that Defendant

- 4 -

A. Standard of Review

> When reviewing a domestic violence protective order, our task is to determine whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.

*Martin v. Martin*, ___ N.C. App. ___, ___, 832 S.E.2d 191, 197 (2019) (internal marks and citation omitted). "While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo*." *Tyll v. Willets*, 229 N.C. App. 155, 158, 748 S.E.2d 329, 331 (2013) (citation omitted). "Under a *de novo* review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal marks and citation omitted).

B. Merits

An "aggrieved party" may seek a DVPO against "a person with whom" he or she "has or has had a personal relationship[.]" N.C. Gen. Stat. § 50B-1(a) (2019). The term "personal relationship" includes those where the parties

    (1) Are current or former spouses;

---

is now 16 does not resolve the dispute at issue: whether the trial court erred in granting Plaintiff a DVPO against Defendant based on the complaint filed when Defendant was 14. Nor, as noted above, does Defendant turning 16 render the DVPO of less consequence to him. *See Smith*, 145 N.C. App. at 437, 549 S.E.2d at 914 ("[A]ppeals from expired domestic violence protective orders are not moot because of the stigma that is likely to attach to a person judicially determined to have committed domestic abuse.") (citation and internal marks omitted).

(2) Are persons of opposite sex who live together or have lived together;

(3) Are related as parents and children, including others acting in loco parentis to a minor child, or as grandparents and grandchildren. *For purposes of this subdivision, an aggrieved party may not obtain an order of protection against a child or grandchild under the age of 16*;

(4) Have a child in common;

(5) Are current or former household members;

(6) Are persons of the opposite sex who are in a dating relationship or have been in a dating relationship. For purposes of this subdivision, a dating relationship is one wherein the parties are romantically involved over time and on a continuous basis during the course of the relationship. A casual acquaintance or ordinary fraternization between persons in a business or social context is not a dating relationship.

*Id.* § 50B-1(b) (emphasis added).

We first note that § 50B-1(b)(3) excludes only three types of relationships: (1) parents and children; (2) others acting in loco parentis to a child; and (3) grandparents and grandchildren. *Id.* § 50B-1(b)(3). The statute does not include an automatic exclusion for a stepparent. In instances such as this case, the focus is on whether stepparents or others are "acting in loco parentis[.]" *Id.*

At issue in this appeal is whether Plaintiff was "acting in loco parentis" to Defendant, who was 14 years old at the time Plaintiff filed for a DVPO, rendering her

unable to obtain an order against Defendant per N.C. Gen. Stat. § 50B-1(b)(3). We review this issue de novo.[4]

While N.C. Gen. Stat. § 50B-1 does not define "in loco parentis," the term has been defined by our Court to "mean[ ] in the place of a parent, and a 'person in loco parentis' . . . [is] one who has assumed the status and obligations of a parent without a formal adoption." *Shook v. Peavy*, 23 N.C. App. 230, 232, 208 S.E.2d 433, 435 (1974) (citation omitted).

> A person does not stand *in loco parentis* from the mere placing of a child in the temporary care of other persons by a parent or guardian of such child. This relationship is established only when the person with whom the child is placed intends to assume the status of a parent—by taking on the obligations incidental to the parental relationship, particularly that of support and maintenance.

*Liner v. Brown*, 117 N.C. App. 44, 49, 449 S.E.2d 905, 907 (1994) (internal marks and citation omitted). Our Court has further elaborated that whether a person stands in loco parentis "is a question of intent to assume parental status and depends on all the facts and circumstances of th[e] case." *Id.* (internal marks and citation omitted).

---

[4] Though the trial court labeled its determination that Plaintiff had never been able to act in loco parentis to Defendant as a finding of fact, we review it de novo because it is a conclusion of law that requires legal reasoning. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) ("[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law.") (citations omitted); *see also In re A.P.*, 165 N.C. App. 841, 846, 600 S.E.2d 9, 13 (2004) ("[S]uch placement does not warrant the *conclusion* that respondent was standing in loco parentis to the children.") (emphasis added); *In re T.B.*, 200 N.C. App. 739, 746, 685 S.E.2d 529, 534 (2009) ("[W]e are unable to *conclude* that [r]espondent's actions are consistent with one who assumes the status and obligation of a parent[.]") (emphasis added).

While our appellate courts have not analyzed in loco parentis status under N.C. Gen. Stat. § 50B-1(b)(3), this Court has examined whether the evidence does or does not support concluding the status has been established in other contexts. We review three instructive instances below.

First, our Court has held that "[t]ypically, the status of in loco parentis terminates [for a stepparent] upon divorce." *Duffey v. Duffey*, 113 N.C. App. 382, 385, 438 S.E.2d 445, 447 (1994). A stepparent can, however, "voluntarily extend[ ] his [or her] status beyond the termination of the marriage" by, for example, agreeing to continue to financially support the child in question. *Id.* at 385, 438 S.E.2d at 447-48. Pertinent to this case, *Duffey* further stands for the proposition that a change in circumstances can impact the assessment of whether an in loco parentis relationship continues.[5]

Our Court has also assessed whether grandparents, who had previously served as kinship placements for their grandchildren, stand in loco parentis such that they

---

[5] In making this observation, we in no way suggest that such a change in circumstance can operate to similar effect when it comes to parents and grandparents who seek DVPOs against children and grandchildren under the age of 16. Parents and grandparents cannot obtain a DVPO against, respectively, their children and grandchildren under the age of 16. N.C. Gen. Stat. § 50B-1(b)(3) (2019). This is the case even if, for instance, said parents/children or grandparents/grandchildren "are current or former household members[,]" *id.* § 50B-1(b)(4), per the specific–general canon of construction, *see High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 322, 735 S.E.2d 300, 305 (2012) ("[W]hen two statutes arguably address the same issue, one in specific terms and the other generally, the specific statute controls."). In contrast, and as discussed below in greater detail, those falling in the in loco parentis category are only barred from obtaining a DVPO so long as they are "*acting* in loco parentis to a minor child . . . under the age of 16[.]" N.C. Gen. Stat. § 50B-1(b)(3) (2019) (emphasis added).

have standing to appeal permanency planning orders related to their minor grandchildren. Where the evidence indicates that the placement was temporary, we have held that these respondent grandparents do not stand in loco parentis to their grandchildren. *See In re A.P.*, 165 N.C. App. at 846-47, 600 S.E.2d at 12-13 (noting several factors, including: (1) that the child's parents were involved and were attempting to remain involved in the child's life, and (2) that placement with the respondent step-grandfather had lasted for eight months); *see also In re T.B.*, 200 N.C. App. at 745, 685 S.E.2d at 534 (concluding there was insufficient evidence as to whether maternal grandmother stood in loco parentis to T.B. where there was insufficient evidence as to whether the child's placement "was intended to be temporary or permanent or its duration").

In loco parentis status has also been addressed in the context of whether a juvenile defendant's uncle had assumed the status for purposes of N.C. Gen. Stat. § 7B-2101(b) (2019), which prohibits the admission of a juvenile's confession "unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney." In *State v. Benitez*, we concluded that the defendant's uncle had "intended to and did assume the status of a parent[,]" where the trial court's findings of fact established that the defendant's mother lived in El Salvador, his uncle provided sole support for the defendant in the United States, including his own room in the uncle's home, his food, clothing, and medical care, and

his uncle had enrolled him in school, and was listed as his parent on school forms. ___ N.C. App. ___, ___, 810 S.E.2d 781, 792-93 (2018).

Here, applying the factors set out by *Liner* and further elaborated by our Court, the findings by the trial court and the record do not support the conclusion that Plaintiff "was not ever able to act in loco parentis" to Defendant. Plaintiff testified that she quit her job to take care of Defendant and his sister; her care for Defendant included cooking, cleaning, taking him to school, and making and taking him to doctors' appointments—actions this Court has previously considered "obligations incidental to the parental relationship[.]" *Liner*, 117 N.C. App. at 49, 449 S.E.2d at 907 (citation omitted). In addition to providing support and maintenance for Defendant, Plaintiff manifested her "intent to assume parental status" by, for instance, working with a therapist to set boundaries for Defendant. Her testimony that she considered herself to be parenting Mr. Lopez's children also undermines the trial court's conclusion that she was never able to act in loco parentis to Defendant. *Id.* And, unlike *In re A.P.* and *In re T.B.*, Defendant's living arrangement with Plaintiff and Mr. Lopez was intended to be permanent, not temporary. This is evidenced by the fact that, upon being released from a two-year stay in a court-ordered treatment facility, Defendant returned to again live with his father and stepmother. Each of these facts are consistent with Plaintiff having provided for "all

the needs of a juvenile [of] the defendant's age." *Benitez*, ___ N.C. App. at ___, 810 S.E.2d at 792.

Plaintiff argues (and the trial court concluded similarly) that there "was sufficient evidence that [she] did not intend to stand in loco parentis to Defendant due to his violence and threats against her." But the in loco parentis relationship is established where the person "intends to assume the status of a parent—by taking on the obligations incidental to the parental relationship, particularly that of support and maintenance." *Liner*, 117 N.C. App. at 49, 449 S.E.2d at 907. Relatedly, Plaintiff's argument runs afoul of the statute's plain language. Instances of domestic violence between a child under the age of 16 and the person asserted to be acting in loco parentis cannot alone determine whether or not that status exists—to hold otherwise would contravene the statutory exemption categorically prohibiting those acting in loco parentis from "obtain[ing] an order of protection against a child . . . under the age of 16." N.C. Gen. Stat. § 50B-1(b)(3) (2019). Put another way, if domestic violence *by itself* could serve as the basis for concluding that an in loco parentis relationship did not exist, then the rule could swallow the exception in cases like the current controversy.

Though we vacate the order entered here because the findings and record cannot support the conclusion that Plaintiff had never formed an in loco parentis relationship with Defendant, we remand for the trial court to enter a new order with

findings of fact and conclusions of law consistent with this opinion. The trial court may, in its discretion, take further evidence from the parties. As a general matter, the record before us is often less than clear about what happened when between Plaintiff and Defendant. More to the point, the effects of Defendant's domestic violence on Plaintiff's provision of support and maintenance during the critical window from Defendant's December 2018 return to the house to Plaintiff's 18 July 2019 filing of the complaint are not plain. On the one hand, Plaintiff testified she continued "cooking, cleaning, taking [the children] to school, making doctors' appointments, seeing that they got to the doctors' appointments[, and] taking [the children] to the store when they needed to go" after she married Mr. Lopez on 9 February 2018. But, on the other hand, Defendant's threats toward her increased in these months as well. Given that this case presents a matter of first impression and because Plaintiff could have obtained (and potentially renewed) a DVPO if she were no longer acting in loco parentis to Defendant,[6] further proceedings are permissible.

---

[6] Again, we are guided by the plain language of the statute here. The statute in some instances looks not only to current but also to past circumstances in defining those personal relationships that can serve as the basis for seeking a DVPO. *See* N.C. Gen. Stat. § 50B-1(b)(2), (5), (6) (defining "personal relationships" to include "persons of opposite sex *who live together or have lived together*[,]" "*current or former* household members[,]" and "persons of the opposite sex *who are in* a dating relationship or *have been in* a dating relationship" (emphasis added)). Notably, however, the exception prohibiting the issuance of a DVPO against a child under the age of 16 applies only, in pertinent part, to those "*acting in loco parentis*" as opposed to those "acting or who have acted in loco parentis." *Id.* § 50B-1(b)(3) (emphasis added). When construing a statute, we presume these distinctions are not arbitrary, but instead that "the legislature carefully chose each word used." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009).

*Compare State v. Gordon*, 261 N.C. App. 247, 261, 820 S.E.2d 339, 349 (2018) (vacating and remanding satellite-based monitoring case of first impression for further proceedings), *with State v. Greene*, 255 N.C. App. 780, 783-84, 806 S.E.2d 343, 345 (2017) (reversing without remand for further proceedings trial court order denying defendant's application for satellite-based monitoring where case law uncertainty had resolved).

## III. Conclusion

We vacate the trial court's order and remand for entry of a new order because the findings of fact do not support its conclusion that Plaintiff never acted in loco parentis to Defendant. On remand, the trial court may in its sole discretion review additional evidence and shall enter a new order consistent with this opinion.

VACATED AND REMANDED.

Judge STROUD concurs.

Judge BRYANT concurs in the result.

---

And, as noted above, though the order at issue expired during the course of this appeal, DVPOs can be extended for an additional year on two occasions. *See* N.C. Gen. Stat. § 50B-3(b) (2019). Plaintiff therefore could obtain relief through 23 August 2021 and then again through 23 August 2022 if she can carry her burden of showing she did not provide support and maintenance in any remand proceedings the trial court deems necessary.