NO. COA13-433

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

IN THE MATTER OF:

                                     Rowan County
                                     Nos. 03 JA 275-78, 06 JA 250-51

T.H., T.H., A.S.,
J.S., M.W., A.W.

Appeal by respondent from adjudication order entered 3 May 2012 by Judge Charlie Brown and disposition order entered 9 January 2013 by Judge Lillian B. Jordan in Rowan County District Court. Heard in the Court of Appeals 8 October 2013.

*Cynthia Dry for petitioner-appellee Rowan County Department of Social Services.*

*Jeffrey L. Miller for respondent-appellant mother.*

*Administrative Office of the Courts, by Associate Counsel Deana K. Fleming, for guardian ad litem.*

BRYANT, Judge.

Where respondent-mother fails to establish an immediate and direct interest in four juveniles — Tracy, Todd, Mary, and Ann[1] — following the surrender of her parental rights as to them in a

---

[1] Pseudonyms are used throughout this opinion to protect the juveniles' privacy and for ease of reading.

prior proceeding, we affirm the trial court's ruling that respondent-mother may not intervene in the juveniles' dispositional hearing as a matter of right. Where respondent-mother does not come within any category of persons afforded a right to appeal a juvenile matter arising from Subchapter I of Chapter 7B, as such appeal relates to the four juveniles adopted from respondent-mother, respondent-mother lacks standing to appeal. Accordingly, we must dismiss respondent-mother's appeal as to those four juveniles. Because there was sufficient evidence to support the trial court's findings of fact and those findings support the trial court's conclusion that Ashley and John were dependent, we affirm that determination. Where respondent-mother was on notice that the trial court would enter a permanent plan for her two children, respondent-mother participated in the dispositional hearing to establish a permanent plan, and did not object to the lack of notice, the trial court did not err in establishing a permanent plan. Where the trial court's unchallenged findings of fact support its conclusion that reunification efforts would be inconsistent with the juvenile's health, safety, and need for a permanent home, we affirm the trial court's conclusion that reunification efforts are not required at this time. Where the trial court failed to establish an

appropriate schedule for respondent-mother to visit her children, we remand the matter to the trial court for entry of such a schedule.

Respondent-mother Claire Wilson ("Claire")[2], the biological mother of the juveniles, appeals from orders: (1) adjudicating the juveniles dependent; (2) denying her motion to intervene; (3) ordering a permanent plan of adoption for Tracy, Todd, Mary, and Ann; and (4) ordering a permanent plan of custody or guardianship for Ashley and John. After careful review, we affirm in part, remand in part, and dismiss in part Claire Wilson's appeal.

On 27 January 2012, the Rowan County Department of Social Services ("DSS") filed a petition alleging that Tracy, Todd, Ashley, John, Mary, and Ann were dependent juveniles. DSS stated that on 27 January 2012, Janice Lake ("Janice"), the maternal grandmother of the juveniles, was murdered. Janice had adopted Tracy, Todd, Mary, and Ann in 2009 and in 2004 had been granted custody of Ashley and John. In its petition, DSS alleged that there were no appropriate family members to care for the children and subsequently, took custody of the juveniles by non-secure

---

[2] Pseudonyms are used to protect the identity of respondent-mother, her adult relatives and caretakers of the children.

custody order. On 2 February 2012, the trial court appointed the juveniles a guardian ad litem.

An adjudicatory hearing was held on 29 March 2012. The trial court adjudicated the children "dependent juveniles" and ordered that legal custody, as well as authority over placement and visitation, remain with DSS. Additionally, the trial court stated the following:

> It is in the best interests of the juveniles for the temporary permanent plan of [John and Ashley] to be custody or guardianship with a relative or other court approved caretaker. The temporary permanent plan for [Ann, Mary, Todd, and Tracy] should be adoption.

On 2 October 2012, several of the juveniles' relatives filed a joint motion to intervene in the juvenile proceedings. The relatives stated that they were willing and able to provide care for the juveniles and that it was in the best interests of the juveniles to be placed with family members. On 8 October 2012, Mr. and Mrs. Alfred, who were the court approved placement providers for all of the juveniles, also filed a motion to intervene. Mr. and Mrs. Alfred argued that they should be "permitted to intervene because it would be in the best interests of all the children to have [Mr. and Mrs. Alfred] involved as parties in their case, since [Mr. and Mrs. Alfred] [] have

developed such strong bonds with the children and are providing their daily care."

On 10 October 2012, Claire filed a motion to intervene. The motion related solely to Tracy, Todd, Mary, and Ann, the four juveniles adopted by Janice. Claire noted that she was the biological mother of the juveniles and legally their sister since the children had been adopted by Claire's mother. Claire denied the material allegations made by Mr. and Mrs. Alfred in their motion to intervene and requested that the juvenile petition be terminated, the juveniles placed with her, or in the alternative, members of her family, and that Mr. and Mrs. Alfred's motion to intervene be denied.

A dispositional hearing was conducted on 8, 9, and 26 November 2012. The trial court denied all motions to intervene. The court found that no relative was able to provide proper care and supervision for the juveniles and that placement with "any of the identified relatives" was contrary to the best interests of the juveniles. The trial court specifically found that it was contrary to the best interests of the juveniles for them to return to Clarie's home. The trial court made findings regarding Todd's repeated attempts to harm himself and others, as well as his auditory and visual hallucinations, and placed him in a residential

psychiatric facility, with placement with Mr. and Mrs. Alfred if possible once his treatment was complete. The remaining juveniles were placed with Mr. and Mrs. Alfred. The court set the permanent plan for Tracy, Todd, Mary and Ann as adoption and the permanent plan for Ashley and John as custody or guardianship with Mr. and Mrs. Alfred. Claire appeals.

_____

On appeal, Claire raises the following issues: whether (I) the trial court erred in denying her motion to intervene; (II) there was sufficient grounds to support the conclusion the children were dependent juveniles; (III) there were sufficient grounds to cease reunification efforts; (IV) the trial court erred in establishing a permanent plan for the juveniles; and (V) the written order failed to establish a proper visitation plan.

*I. Motion to Intervene*

Claire first argues that the trial court erred by denying her motion to intervene as a matter of right, pursuant to our Rules of Civil Procedure, Rule 24(a)(2). We disagree.

"This Court reviews a trial court's decision granting or denying a motion to intervene pursuant to N.C. Gen. Stat. § 1A-1, Rule 24(a)(2), on a *de novo* basis." *Bailey & Assoc., Inc. v.*

*Wilmington Bd. of Adjustment*, 202 N.C. App. 177, 185, 689 S.E.2d 576, 583 (2010) (citation omitted).

As to whether our Juvenile Code, codified in Chapter 7B of our North Carolina General Statutes, and specifically, Subchapter I, "Abuse, Neglect, Dependency," address intervention, the briefs submitted to us reference only section 7B-1103, which allows a person or agency to "intervene in a pending abuse, neglect, or dependency proceeding *for the purpose of filing a motion to terminate parental rights*." N.C. Gen. Stat. § 7B-1103(b) (2011) (emphasis added).[3] We find no other statute within this subchapter specifically referencing intervention. Therefore, we look to our Rules of Civil Procedure for authority governing intervention.

> The General Assembly has set out the judicial procedure to be used in juvenile proceedings in Chapter 7B of the General Statutes. This Court has previously held that [t]he Rules of Civil Procedure, while they are not to be ignored, are not superimposed upon these hearings. Instead, the Rules of Civil Procedure apply only when they do not conflict

---

[3] We note that effective 1 October 2013, within Subchapter I, "Abuse, Neglect, Dependency," section 7B-401.1 states that "[e]xcept as provided in G.S. 7B-1103(b), the court shall not allow intervention by a person who is not the juvenile's parent, guardian, custodian, or caretaker but may allow intervention by another county department of social services that has an interest in the proceeding. This section shall not prohibit the court from consolidating a juvenile proceeding with a civil action or claim for custody pursuant to G.S. 7B-200." N.C. Gen. Stat. § 7B-401.1 (effective 1 October 2013).

> with the Juvenile Code and only to the extent that the Rules advance the purposes of the legislature as expressed in the Juvenile Code.

*In re L.O.K.*, 174 N.C. App. 426, 431—32, 621 S.E.2d 236, 240 (2005) (citations and internal quotation omitted).

Rule 24 of our Rules of Civil Procedure governs intervention, both intervention of right and permissive intervention. *See* N.C. Gen. Stat. § 1A-1, Rule 24 (2011). Rule 24(a)(2), "Intervention of right," states, in pertinent part, that

> [u]pon timely application anyone shall be permitted to intervene in an action . . . .
>
> When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

N.C.G.S. § 1A-1, Rule 24(a)(2).

Permissive intervention pursuant to Rule 24(b)(2), states, in part, that

> anyone may be permitted to intervene in an action.
>
> When an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or State governmental officer or agency or upon any regulation, order, requirement, or

> agreement issued or made pursuant to the statute or executive order, such officer or agency upon timely application may be permitted to intervene in the action.

N.C.G.S. § 1A-1, Rule 24(b)(2).

Statute 7B-100, entitled "Purpose," of our Juvenile Code, Subchapter I, states that Subchapter I "shall be interpreted and construed so as to implement the following purposes and policies . . . [t]o develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the juvenile, and the strengths and weaknesses of the family." N.C. Gen. Stat. § 7B-100(2) (2011). We construe this provision to permit intervention pursuant to Rule 24. *See generally, In re Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410 (1986) (where this Court, when considering permissive intervention under Chapter 7A, the predecessor to Chapter 7B, sanctioned the use of permissive intervention where it determined that intervention "was necessary to elicit full and accurate information pertaining to the welfare of the child." (citation omitted)).

In its 9 January 2011 disposition order, the trial court acknowledges that prior to receiving evidence as to the dispositional hearing, it considered motions to intervene, including the motion filed by Claire. The trial court concluded

that "[n]o person seeking to intervene may be allowed to intervene as of right."

> This Court has stated that where no other statute confers an unconditional right to intervene, the interest of a third party seeking to intervene as a matter of right under N.C.G.S. § 1A-1, Rule 24(a)
>
>> must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment.... [sic] One whose interest in the matter in litigation is not a direct or substantial interest, but is an *indirect*, inconsequential, *or a contingent* one cannot claim the right to defend.

*Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 682–83 (1999) (citations and quotations omitted).

In her brief to this Court, Claire contends that

> [t]o the extent [I] [am] considered only as a legal 'sister' of [the] four children, [I] was entitled to intervene as a party in the proceedings as a matter of right so that [I] could adequately present and represent the otherwise unrepresented family member interest and arguments for maintaining a family placement, family relationship, and potential for a family reunification with the four juveniles . . . and so as to assure [I] may have a proper legal voice in this appeal and any subsequent juvenile court proceedings.
>
> [I] [have] a direct interest in the family relationships with each of the juveniles which can be protected and represented adequately only if [I] (or some family member) is allowed to participate as a full party to the juvenile

> proceedings. The adoption of the juveniles by strangers to the family would forever sever the family ties and legal relationships of [me] and [my] relatives with the children.

Initially, we note Claire's acknowledgment that as to four of the children subject to this action, she has no parental rights. In an unchallenged finding of fact, the trial court stated that Janice adopted Tracy, Todd, Mary, and Ann in 2009. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.") (citations omitted).  Pursuant to N.C. Gen. Stat. § 48-1-106,

> [a] decree of adoption severs the relationship of parent and child between the individual adopted and that individual's biological or previous adoptive parents.  After the entry of a decree of adoption, the former parents are relieved of all legal duties and obligations due from them to the adoptee, . . . and the former parents are divested of all rights with respect to the adoptee.

N.C. Gen. Stat. § 48-1-106(c) (2011).  Thus, Claire's parental rights to Tracy, Todd, Mary, and Ann — the four juveniles adopted by Janice — have been severed.  Claire has also been divested of all rights and relieved of all legal duties and obligations with respect to these four juveniles.  *See id.*

Furthermore, Claire's motion to intervene fails to provide

any indication that she has the authority to defend or assert "the otherwise unrepresented family member interest [or can present] . . . arguments for maintaining a family placement, family relationship, and potential for a family reunification with the four juveniles[.]" *See Virmani*, 350 N.C. at 459, 515 S.E.2d at 683 (holding that a party cannot directly intervene where its interest is at best indirect). We find that Claire's motion to intervene failed to assert a claim or defense that can act as a basis for intervening in this action. Pursuant to our Rules of Civil Procedure, Rule 24, "[a] person desiring to intervene shall serve a motion to intervene upon all parties affected thereby. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." N.C. Gen. Stat. § 1A-1, Rule 24(c) (2011).

Given that Claire's parental rights to the four adopted juveniles have been severed, her motion to intervene in the juvenile's dispositional hearing failed to present any direct or immediate interest such that she was entitled to intervene in the juvenile's dispositional hearing as a matter of right. *See* N.C.G.S. § 1A-1, Rule 24(a)(2); *Virmani*, 350 N.C. at 459, 515 S.E.2d at 682-83. Moreover, Claire's motion was defective for

failure to include a pleading asserting a claim or defense as required by Rule 24(c). *See Kahan v. Longiotti*, 45 N.C. App. 367, 371, 263 S.E.2d 345, 348 (1980) ("[A] motion to intervene . . . must be accompanied by a proposed pleading."), *overruled on other grounds by Love v. Moore*, 305 N.C. 575, 291 S.E.2d 141 (1982). Accordingly, we affirm the trial court's denial of Claire's motion to intervene as a matter of right.

We also note that in addition to its conclusion denying intervention as a matter of right, the trial court denied Claire's motion to intervene on the basis of permissive intervention. In considering the use of permissive intervention as authorized under the juvenile code as codified in Chapter 7A, the predecessor to the juvenile code as codified in Chapter 7B, this Court has sanctioned its use where it "was necessary to elicit full and accurate information pertaining to the welfare of the child." *In re Baby Boy Scearce*, 81 N.C. App. at 541, 345 S.E.2d at 410 (citation omitted).

In *Baby Boy Scearce*, the foster parents sought to intervene in an action in which a biological father sought physical and legal custody of a child. The trial court concluded that the foster parents' right to intervene "derives from the child's right to have his or her best interests protected." *Id.* Other factors

considered by this Court included that intervention "was necessary to elicit full and accurate information pertaining to the welfare of the child," *id.* at 541, 345 S.E.2d at 410 (citation omitted), and that "intervention by the foster parents would not 'prejudice the adjudication of the rights of the original parties.'" *Id.*

Nevertheless, while Claire did not challenge on appeal the trial court's ruling that permissive intervention should be denied as a matter of law, we do not believe the trial court abused its discretion in denying Claire's motion to intervene on the basis of permissive intervention.

While the trial court's order denied Claire's motion to intervene and participate as a party to the dispositional proceedings, we acknowledge the trial court's findings regarding the participation of the juvenile's family members in determining their individual best interests: "from the representations of counsel and the presence of all interested relatives in the courtroom, the court is comfortable that sufficient evidence regarding all possible relative placements will be offered for the court's consideration in determining the best interests of each of the children"; and "[t]he proposed intervenors' interests will not be adversely affected by denying their motions to intervene since they may participate indirectly in the proceedings through their

status as witnesses in the disposition and suggested relative placements."

*Standing*

We next consider a motion to dismiss Claire's appeal as to the four juveniles to whom Claire has surrendered her parental rights. Before the Court, the guardian ad litem ("GAL") asserts that Claire lacks standing to bring forward her appeal in relation to Tracy, Todd, Mary and Ann. We agree, and grant the GAL's motion to dismiss Claire's appeal as to Tracy, Todd, Mary and Ann.

A juvenile matter based on Subchapter I, "Abuse, Neglect, Dependency" of General Statutes Chapter 7B may be appealed by the following parties:

> (1) A juvenile acting through the juvenile's guardian ad litem previously appointed under G.S. 7B-601.
>
> (2) A juvenile for whom no guardian ad litem has been appointed under G.S. 7B-601. If such an appeal is made, the court shall appoint a guardian ad litem pursuant to G.S. 1A-1, Rule 17 for the juvenile for the purposes of that appeal.
>
> (3) A county department of social services.
>
> (4) A parent, a guardian appointed under G.S. 7B-600 or Chapter 35A of the General Statutes, or a custodian as defined in G.S. 7B-101 who is a nonprevailing party.
>
> (5) Any party that sought but failed to obtain termination of parental rights.

N.C. Gen. Stat. § 7B-1002 (2011); *see* N.C. Gen. Stat. § 7B-1001 (2011) (Right to appeal); *see also In re A.P.*, 165 N.C. App. 841, 600 S.E.2d 9 (2004) (holding that a step-grandfather had no standing to appeal even though his name was listed on the petition seeking to adjudicate the child neglected where the step-grandfather was not a caregiver, custodian, or parent of the child).

The trial court's finding of fact that Janice adopted four of Claire's biological children — Tracy, Todd, Mary and Ann — in 2009 is uncontested. *See Koufman*, 330 N.C. at 97, 408 S.E.2d at 731 ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.") (citations omitted). As a consequence, Claire's parental rights to those four juveniles have been severed. *See* N.C.G.S. § 48-1-106 ("[a] decree of adoption severs the relationship of parent and child between the individual adopted and that individual's biological or previous adoptive parents."). Claire was not appointed by the court as a guardian for the four adopted juveniles following Janice's death and no findings of fact support a conclusion that Claire acted as a custodian for the juveniles. *See* N.C. Gen. Stat. § 7B-101(8) (2011) (A "Custodian" is defined as "[t]he person or agency that

has been awarded legal custody of a juvenile by a court or a person, other than parents or legal guardian, who has assumed the status and obligation of a parent without being awarded the legal custody of a juvenile by a court.); *see also In re T.B.*, 200 N.C. App. 739, 685 S.E.2d 529 (2009) (holding that the respondent was not a custodian to the child where the record reflected no order awarding either legal or physical custody of the juvenile to the respondent and no evidence supported a finding that the respondent stood *in loco parentis* in relation to the child).

Because Claire does not come within any category of persons afforded a statutory right to appeal from a juvenile matter pursuant to N.C.G.S. §§ 7B-1001 and 7B-1002, Claire lacks standing to appeal the trial court's 3 May 2012 adjudication order and 9 January 2013 juvenile disposition order as those orders pertain to Tracy, Todd, Mary, and Ann — the four children Claire surrendered to adoption. *See* N.C.G.S. § 7B-1002. As a result, we address Claire's arguments arising from her appeal of the 3 May 2012 adjudication order and 9 January 2013 juvenile disposition order only as those orders relate to Ashley and John.

## II. Adjudication of Dependency

Claire argues that the trial court erred by adjudicating Ashley and John dependent juveniles within the meaning of N.C.

Gen. Stat. § 7B-101.  Claire contends that there was insufficient evidence presented at the adjudicatory hearing to meet the clear and convincing standard necessary to conclude the juveniles were dependent.  We disagree.

> In all actions tried upon the facts without a jury ... [sic] the court shall find the facts specifically and state separately its conclusions of law thereon[.] . . . The resulting findings of fact must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.

*In re J.S.*, 165 N.C. App. 509, 510—11, 598 S.E.2d 658, 660 (2004) (citations and quotations omitted).  "The role of this Court in reviewing a trial court's adjudication of [dependency] is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]"  *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation and quotation omitted).  "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary."  *Id.* (citation omitted).

"Dependent juvenile" is defined in N.C. Gen. Stat. § 7B-101(9) as:

> [a] juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the

> juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-101(9) (2011). "In determining whether a juvenile is dependent, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) (citation and quotation omitted). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." *Id.* (citation omitted).

In the instant case, it is not disputed that the legal custodian of the juveniles, Janice, is deceased. The trial court further found that "[a]t the time that the juvenile petition was filed, there were no appropriate family members immediately available to care for the children long-term." This finding is supported by the uncontradicted testimony of Kris Tucker, a DSS social worker, who testified at the adjudicatory hearing that there were no appropriate family members to care for the juveniles. Tucker further testified that although the juveniles were in the

care of an aunt and uncle, Mr. and Mrs. Chase, "they are not able to provide ongoing care and are not interested in establishing permanence for [the juveniles]." Claire did not present herself as a potential caregiver at the adjudicatory hearing, nor were any alternative caregivers presented. Accordingly, we conclude that the trial court did not err by adjudicating Ashley and John as dependent juveniles.

### III. Permanent Plan

Claire next argues that the trial court erred when, in the adjudicatory order, it made findings of fact and conclusions of law regarding a "temporary permanent plan" for the juveniles. However, we conclude that any alleged error was rendered harmless by the trial court's entry of a permanent plan in its dispositional order. *See In re J.P.*, ___ N.C. App. ___, ___ S.E.2d ___ (19 November 2013) (COA13-35-2).

Claire additionally argues that the trial court erred by entering a permanent plan for the juveniles at disposition when she did not have the statutorily required notice that the trial court would consider a permanent plan. We disagree.

Claire was provided notice that the trial court intended to consider a permanent plan for the juveniles at disposition when it made a "temporary permanent plan" at adjudication. *See id.* Thus,

as in *In re J.P.*, Claire and her attorney attended and participated in the trial court's dispositional hearing and did not object to the lack of formal notice. *Id.* at ___, ___ S.E.2d at ___ (citing *In re J.S.*, 165 N.C. App. 509, 514, 598 S.E.2d 658, 662 (2004) (where this Court stated that a party waives its right to notice under section 7B-907(a) by attending the hearing in which the permanent plan is created, participating in the hearing, and failing to object to the lack of notice). Accordingly, we conclude that Claire waived any objection to lack of formal notice of a hearing on a permanent plan when she made a pre-trial motion to intervene in the dispositional hearing, made arguments before the trial court, was allowed to present witnesses regarding the best interest of the child, and failed to object to the lack of formal notice.

## IV. *Dispositional Conclusions*

Claire next challenges several of the trial court's conclusions of law. Claire does not challenge any of the trial court's findings of fact and, accordingly, they are binding on appeal. *See Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. Our review is therefore limited to whether the trial court's findings of fact support its conclusions of law and disposition. *In re Shepard*, 162 N.C. App. 215, 221-22, 591 S.E.2d 1, 6 (2004).

Claire first challenges the trial court's conclusions of law 2 and 7.

> 2. No relative of the juveniles is able to provide proper care and supervision of all the juveniles in a safe home. Placement with any of the identified relatives is contrary to the best interests of the juveniles.
>
> . . . .
>
> 7. The [DSS] has made reasonable and diligent efforts to secure relative placements for the children. The three relatives identified were not completely able to provide for the children.

Pursuant to N.C. Gen. Stat. § 7B-903(a)(2)(c), when placing a juvenile outside of the home,

> [i]n placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile.

N.C. Gen. Stat. § 7B-903(a)(2)(c) (2011). This Court has recognized that our statutes give a preference, where appropriate, to relative placements over non-relative, out-of-home placements. *In re L.L.*, 172 N.C. App. 689, 701, 616 S.E.2d 392, 399 (2005). However, before determining whether relative or non-relative

placement is in the best interest of the juvenile, the statute first requires the trial court to determine whether the relative in question is *willing and able* to provide proper care and supervision in a safe home. N.C. Gen. Stat. § 7B-903(a)(2)(c). We review a dispositional order only for abuse of discretion. *In re Pittman*, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567 (2002).

Here, the trial court found as fact:

> 8. On March 29, 2012, [Ann, Mary and John] were moved from the home of [Mr. and Mrs. Chase] at the request of the placement. [Mr. and Mrs. Chase] indicated to [DSS] that they thought the placement would be a temporary one and that they could not provide for the children long term. At the time placement was needed . . . the only identified and approved placement was with . . . the younger children's school principal, and her fiancé [Mr. Alfred]. Placement with [Kimberly Chase, an aunt] was not approved at the time because a fire in her home in late February 2012 had left her without a home, because she had several identified medical issues and medications, and because she had fallen asleep on two occasions while talking with Social Worker Hardison about the children. The [DSS] was concerned that [Kimberly Chase] could not provide the supervision needed for the children. [Claire Wilson] was unable to be approved for placement of the children because she was under investigation by the [DSS] regarding the two children in her home following positive drug screens for cocaine on February 16, 2012 and March 8, 2012.
>
> 9. On May 3, 2012, [Tracy, Todd and Ashley] were moved from [Lisa Chase's, an aunt] home because of concerns identified by the [DSS].

These concerns included a lack of sufficient space in the home for the children, the fact that [Lisa Chase] was out of compliance with Rowan Housing Authority regulations by having the children in the home, issues with supervision, excessive tardiness and absences in school, reports from the school . . . that the children would come to school hungry, [Lisa Chase's] tendency to minimize the school behavioral problems of the children, and [Lisa Chase's] transporting of the children in her car without having them properly restrained in safety seats. Social Worker Hardison witnessed the children in the car not properly restrained on three occasions. [Tracy, Todd, and Ashley] were placed with their siblings in the home of [Mr. and Mrs. Alfred]. The children were happy and excited to be placed together in one home again.

. . . .

23. On May 17, 2012, the [DSS] received a request from [Claire Wilson's attorney] to consider certain relatives and family friends for placement of the juveniles. Since the juveniles were all placed together by this time, keeping them together was an important goal of [DSS] in its decision-making. The [DSS] made diligent efforts to study and become familiar with each option presented to it for placement of the children.

. . . .

27. [Lisa Chase] continued to be ruled out as a placement option because of the concerns that led to the removal of the three youngest children from her home on May 3, 2012. . . . [Terra Roberts (Godmother to the juveniles)] was ruled out as a placement because of her inability to provide proper [care and] supervision of the children and because of inadequate space for the children in her home.

28.  [Mr. and Mrs. Miles], who live in Guilford County, submitted to a pre-placement assessment by Guilford Count DSS.  The assessment was positive, and [they were] willing to have all six children placed with them.  The children were not moved to [their] home for several reasons.  One, several of the children indicated that they did not know [them] and did not want to move to Greensboro.  Two, . . . [a]lthough a past investigation of neglect was not substantiated, it was of some concern to the [DSS] that [Mrs. Miles] told Social Worker Williams on September 5, 2012 that she had no past history with any DSS.  Three, the [DSS] has been unable to ascertain after speaking with [Mr. and Mrs. Miles] and other family members exactly how [Mr. Miles] is related to the children.  [Mr. Miles] could only indicate that he was somehow related on "his father's side."  A few other kinship options . . . were individually ruled out as placement options for failing to return the kinship assessment packets mailed to them by the [DSS] or because they were 19 and 20 years old, too young to take on the responsibility of raising six children.

29.  The most positive relative placement option for the children [was Jenetta Thomas].  [Jenetta Thomas is] the children's second cousin. . . .  [Jenetta Thomas] stated that she is willing to provide a home for all of the children, but at the time Social Worker Williams visited her she could accommodate only two or three additional children in her home. . . . [Ashley, Mary, and John] were asked about possible placement with [Jenetta Thomas], and they indicated that they do not know [her] well and do not want to live with her in a different county "out in the country."

30. [Betsy Monroe, Jenetta Thomas' sister].
. . . was found by [DSS to be] willing and able
to take two or three of the children based on
space limitations. . . . The children only
have an acquaintance relationship with [Betsy
Miller] at this time.

It is apparent from the trial court's exhaustive findings of fact that the trial court considered several relative placements but no suitable option was available; where potentially available, the court considered it not in the juveniles' best interests to place the juveniles with the relative. Thus, we conclude the trial court did not abuse its discretion by placing the juveniles in a non-relative placement. Accordingly, we hold that the trial court did not err in making conclusions of law 2 and 7.

Claire next challenges conclusions of law 5 and 6:

5. Efforts to eliminate the need for placement of the juveniles would be inconsistent with the juveniles' health, safety, and need for a safe permanent home within a reasonable period of time.

6. Reunification efforts are not required in this matter . . . [as to John and Ashley because] significant safety issues make reunification with a parent within a reasonable time unlikely. [Claire], their mother, has not asked to have the children live with her.

Pursuant to N.C. Gen. Stat. § 7B-507,

[i]n any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether

an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:

> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]

N.C. Gen. Stat. § 7B-507(b) (2011).

Here, the trial court found as fact:

> 17. All of the children have been diagnosed with PTSD and anxiety disorder. . . . [Ashley] has low cognitive functioning and a language disorder. All of the children . . . receive weekly counseling services for trauma-based disorders.
>
> 18. Therapist Jill [Hill] specializes in working with children who have experienced trauma. She has been seeing [Ann, John, Ashley, and Tracy] weekly since early September 2012. Ms. [Hill] has been working with the children on trust-building and establishing a rapport with them. Ms. [Hill] feels that all the children need ongoing counseling based on the traumatic death of [Janice Lake] and the past history of multiple placements, chaos, separation from siblings, and instability. Ms. [Hill]'s focus with the children is on stability and helping them to feel safe. [Ann, John, Ashley, and Tracy] have expressed to Ms. [Hill] that they like where they are living, they feel safe there, they want to stay together, and they want to stay with [Mr. and Mrs. Alfred]. The children

speak of each other often during therapy with Ms. [Hill] and appear to have a strong connection with each other. Ms. [Hill] is concerned that moving the children at this point would be very disruptive to their pathway of feeling safe. The children's issues cannot be fixed quickly, and their nervous systems are very fragile.

. . . .

24. [Claire Wilson] continued to be ruled out as a placement because of her positive drug screens and her failure to follow up with drug and mental health treatment.

25. Also relevant to the inquiry of whether or not [Claire Wilson] may be an appropriate long-term placement for the children is the prior neglect and DSS history of the children. [Claire Wilson] has a total of ten children, with only two of those children in her care. Her oldest two children [] were in foster care due to neglect on two separate occasions and eventually were adopted by their maternal great-grandmother . . . in 2009. Custody of [John and Ashley] was granted to [Janice Lake], their maternal grandmother, in 2004[;] [Mary and Ann] were in foster care from 2003 until 2005 and from 2006 until 2009 pursuant to petitions filed and adjudicated for neglect by [Claire Wilson]. [Todd and Tracy] were in the legal custody of the [DSS] due to neglect by [Claire Wilson] from 2006 to 2009. [Mary, Ann, Todd, and Tracy] were adopted by their maternal grandmother, [Janice Lake], in 2009. [Claire Wilson] is not requesting that the court consider placing the six children with her. She is in treatment with Daymark Recovery Services[.]

We conclude the uncontested findings of fact support the trial court's conclusions that reunification efforts would be

inconsistent with the juveniles' health, safety and need for a permanent home within a reasonable period of time and were not required. Accordingly, we hold that the trial court did not err in making conclusions of law 5 and 6.

## VI. *Visitation*

Claire next argues that the trial court erred regarding its visitation plan for Ashley and John because it failed to specify the time, place, and conditions under which visitation may be exercised. *In re E.C.*, 174 N.C. App. 517, 521—23, 621 S.E.2d 647, 651—52 (2005) (holding that a trial court must include "an appropriate visitation plan in its dispositional order"). We agree.

North Carolina General Statutes, section 7B-905(c) provides that any dispositional order which leaves the minor child in a placement "outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905(c) (2011). This Court has stated that:

> [i]n the absence of findings that the parent has forfeited their right to visitation or that it is in the child's best interest to deny visitation "the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place[,] and conditions under which such visitation rights may be exercised."

*In re E.C.*, 174 N.C. App. 517, 522-23, 621 S.E.2d 647, 652 (2005) (citation omitted).

Here, the trial court made no finding that Claire had forfeited her right to visitation or that it was in the best interests of Ashley or John to deny visitation. Therefore, the trial court was required to provide a plan containing a minimum outline of visitation, such as the time, place, and conditions under which visitation may be exercised. *Id*. The court provided the following order governing visitation: "The juveniles shall visit regularly with their siblings who live with [Ms. Wilson] and [Ms. Chase], [Kimberly Chase], and [Claire Wilson]. These visits shall begin as soon as possible and shall be supervised by a caregiver selected by the [DSS], including some visits at [Ms. Chase]'s home if possible." The order does not contain the "minimum outline" required by *In re E.C.* As such, the plan constitutes an impermissible delegation of the court's authority under N.C.G.S. § 7B-905. *See In re Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971) (discussing how the award of visitation rights, which is a judicial function, cannot be delegated to a child's custodian). Therefore, we remand for entry of an order of visitation which clearly defines and establishes "the time, place[,] and conditions" under which Claire may exercise

her visitation rights.  *In re E.C.*, 174 N.C. App. at 522—23, 621 S.E.2d at 652.

Affirmed in part, remanded in part, and appeal dismissed in part.

Judges McGEE and STROUD concur.